```
                    Environmental Court of Vermont
                           State of Vermont
==============================================================================
          E N T R Y   R E G A R D I N G   M O T I O N
==============================================================================
```

Champlain Marina Dock Expansion                 Docket No. 28-2-09 Vtec

Project: Expansion of water-borne docks, to accommodate 16 more large boats

Applicant: Champlain Marina, Inc.

```
Title:      Motion for Partial Summary Judgment, (Filing No. 8)
Filed:      February 4, 2010
```

Filed By: Craig Weatherly, Attorney for Applicant Champlain Marina, Inc.

Response in Opposition filed on 03/01/10 by Stephen A. Reynes & Jesse L.
      Moorman, Attorneys for Appellant Neighbors

Reply filed on 03/16/10 by Appellee/Applicant Champlain Marina, Inc.


 _X_ Granted            ___ Denied                ___ Other


        This matter arises out of a decision by the Department of Environmental
Conservation ("DEC") permitting Appellee/Applicant Champlain Marina, Inc.
("Champlain Marina") to add a 177-foot dock extension, with accompanying
finger docks, to its preexisting water-born marina docking facilities in the
Spaulding Bay area of Lake Champlain.  The project site is located in the
Town of Colchester ("Town").  Once completed, this water-borne dock extension
will provide dock space for sixteen additional large boats (i.e., forty feet
in length, or longer).

        The DEC approved the proposed Champlain Marina extension after
determining that Champlain Marina's proposed project complied with the public
good analysis mandated under 29 V.S.A. § 405(b) and the public trust doctrine
codified in 29 V.S.A. § 401.  The Appellants, a group of concerned neighbors
calling themselves "Save the Bay," filed with this Court a timely appeal of
the DEC decision.

        Champlain Marina has now moved for summary judgment, solely as to
Question 11 of Appellants' Revised Statement of Questions; Appellants oppose
the pending motion.  The challenged Question 11 asks the Court:

        Whether, pursuant to 29 V.S.A. § 405(b), the proposed 177-foot
        dock extension to accommodate large boats with deep drafts in a
        shallow, narrow bay, immediately adjacent to one of the State's
        largest and busiest public boat ramps, and in the same bay where
        there already exists three marinas, a recreational camp for
        water-related activities, a sea plane base, and many private
        moorings and docks is consistent with § 7.03(F)(5) of the
        Colchester Zoning Ordinance?

        Champlain Marina argues in its motion for partial summary judgment that
§ 7.03(F)(5) of the Town of Colchester Zoning Ordinance ("Ordinance"), which
purports to regulate "any facility which projects outward from the mean-water
mark" of Lake Champlain, improperly usurps the State's authority to regulate
water-borne encroachments.  In support of its argument, Champlain Marina
claims that water-borne development seaward of the shoreland district

boundary, which is defined by the mean-water mark, is solely within the State's authority to regulate. Applicant therefore argues that since Question 11 is premised upon the authority of Colchester Zoning Ordinance § 7.03(F)(5) to regulate water-borne activities, Appellants Question 11 should be dismissed.

Appellants oppose the motion for partial summary judgment and argue that the "public good" analysis prescribed in 29 V.S.A. § 405(b) requires determining whether Champlain Marina's dock extension is consistent with municipal shoreland zoning ordinances such as Ordinance § 7.03(F)(5). Appellants claim that the 177-foot dock extension will have a substantial adverse affect on the shoreland district and therefore review of those impacts, under 29 V.S.A. § 405(b), is appropriate, necessary, and guided by the statutory reference to Ordinance § 7.03(F)(5).

We begin our analysis of whether Appellants' Question 11 should be summarily dismissed with a review of the standards under V.R.C.P. 56. Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that [a] party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The Court "place[s] the burden of proof on the moving party, and give[s] the opposing party the benefit of all reasonable doubts and inferences." Chapman v. Sparta, 167 Vt. 157, 159 (1997). We address the challenge to the propriety of Question 11 in this light.

In determining whether any encroachment[1] will adversely affect the public good, DEC (and this Court on appeal) must consider the effect of the proposed encroachment on the "public good" by reviewing several factors, including "consistency with municipal shoreland zoning ordinances." 29 V.S.A. § 405(b). In this regard, Appellants have specifically asked by their Question 11, whether the proposed water-borne dock extensions are consistent with Ordinance § 7.03(F)(5), which is a provision within Colchester's "Shoreland District" regulations.

At the heart of Champlain Marina's request for summary dismissal of Question 11 is whether the Town has the authority to regulate, as stated in § 7.03(F)(5), "any facility which projects outward from the mean-water mark." Champlain Marina acknowledges, as it must, that DEC, as the authorized state subdivision, has the authority to regulate water-borne encroachments. However, it argues that DEC should only consider lawful municipal shoreland zoning regulations, and that Ordinance § 7.03(F)(5) exceeds the Town's legal regulatory authority.

Both parties cite the Court to its prior decision in a case with a somewhat similar fact pattern: In re Svendsen Dock Extension Variance, No. 1-1-09 Vtec, Decision on Cross-Motions for Summary Judgment (Vt. Envtl. Ct. Oct. 14, 2009) (Durkin, J.). In Svendsen, we described the State and municipal roles in regulating shoreland and water-borne activities. Under state law, the line of demarcation between shoreland regulation by municipalities and regulation of water-born encroachments by the state is the mean-water mark, which is defined in 10 V.S.A. § 1422(8) as the line of

---

[1] Section 402 provides definitions of the terms used in Title 29, Chapter 11, including 29 V.S.A. § 405. Included therein is the definition for "encroach," from which we derive a meaning for "encroachment," as used in § 405(b), as "any bridge, dock, boathouse, cable, pipeline or similar structure [placed or to be placed] beyond the shoreline as established by the mean-water level of any lakes or ponds which are public waters under the jurisdiction of the [natural resources] board." 29 V.S.A. § 402.

distinction between lands of the shore and water bodies held for the public's use and enjoyment. Id. at 4–5. In particular, we concluded that:

> Nowhere in Title 24, chapter 117, nor in any provision of Title 10, chapter 49, [related to shoreland districts and cited by the Appellants,] does the State specifically authorize municipalities to regulate beyond the mean-water mark of public waters, and into the navigable waters of the state.

Id. at 4. While Svendsen and the case at bar both involve the question of water-borne dock expansions, the cases are different in one important way: Svendsen challenged the propriety of regulating dock expansions under municipal regulations, but the case at bar presents a challenge to the manner in which a dock expansion is regulated under state law.

Thus, the challenge in Svendsen is not present here; the case at bar concerns state regulation of water-borne encroachments, not the municipal regulation that was the premise for dismissal in Svendsen. Champlain Marina argues, however, that when the state regulation of water-borne encroachments is premised upon consistency with a municipal regulation, as is the case in 29 V.S.A. § 405(b), that the validity of the municipal regulation remains at issue. To resolve this issue, we must look to the provisions of the statute and municipal regulation.

As noted above, one stated criterion for determining whether a water-borne encroachment "will adversely affect the public good . . . [is to] consider the effect of the proposed encroachment as well as the potential cumulative effect of existing encroachments . . . [and their] consistency with municipal shoreland ordinances." 29 V.S.A. § 405(b). Champlain Marina contends, correctly we conclude, that an evaluation of consistency should be limited to only those provisions in the municipal shorelands zoning ordinance that are within the enabling authority we addressed in Svendsen.

Ordinance § 7.03(F)(5), on its face, appears premised upon the authority the Town enjoys to regulate use of lands at or above the mean-water mark. In fact, it specifically limits its review to "any proposed construction of shore-based facilities or any facility which projects outward from the mean water mark." Ordinance § 7.03(F)(5). We question the applicability of § 7.03(F)(5) to the dock extension here, however, since the entire project is well past the mean-water mark and located entirely within the navigable waters of Shelburne Bay. In fact, it appears from the record before us that both the parties and the Town have determined that the proposed dock extension does not require a municipal permit under Ordinance § 7.03(F)(5).

In relation to the proposed dock expansion, it appears that some of the provisions from Ordinance § 7.03(F)(5) may exceed the enabling authority of shoreland zoning regulations, and some may not. For example, the first two provisions require that a proposed project "(a) will not create a hazard to navigation [and] (b) will not adversely affect water quality or be a source of nuisance by reason of noise or fumes." Ordinance § 7.03(F)(5)(a)-(b). Such review, at least in relation to the proposed water-borne dock extensions, appears to exceed the Town's regulatory authority. To allow consideration of such municipal regulations would recognize a regulatory power not specifically conveyed to the Town. Svendsen, No. 1-1-09 Vtec, slip op. at 4–5.

As we concluded in Svendsen, the "State has expressly reserved the right to manage Vermont lakes and ponds for the public good—i.e., for the

greatest benefit of the people of Vermont—and vested management authority with the Water Resources Panel . . . and the Department of Environmental Conservation." Id. at 5 (citations omitted). Thus, it would be improper to allow consideration of portions of a municipal regulation that appear to exceed the Town's regulatory authority.

There are other provisions of the Colchester Ordinance, however, that appear appropriate for municipal regulation, and would therefore be appropriate to consider in a state waters encroachment proceeding. For example, the remaining provisions of Ordinance § 7.03(F)(5) require determinations that the proposed project:

> (c) Will not interfere with or prevent use of adjacent shoreland property or its access to and from the water.
>
> (d) Will be compatible with adjacent land uses.
>
> (e) That necessary and adequate sanitary public utilities and parking facilities are available or will be made available.
>
> (f) Will not create an adverse vehicle traffic condition.

Ordinance § 7.03(F)(5)(c)-(f).

These provisions appear premised upon uses or impacts specifically located on land, above the mean-water mark, and thus within the enabling authority of the Town to regulate. Svendsen, No. 1-1-09 Vtec, slip op. at 4 (citing 24 V.S.A. §§ 4411(a), 4424(1)). But the question remains whether Appellants have presented some factual basis for their assertion that considerations under Ordinance § 7.03(F)(5)(c)-(f) are at issue in this appeal. We have found no such factual representation in Appellants' responses, and therefore conclude that Champlain Marina is entitled to summary judgment as to Appellants' Question 11.

A party faced with responding to a summary judgment motion is not specifically obligated to file an affidavit or other documentary evidence in reply. See V.R.C.P. 56(c)(1) ("The adverse party may serve opposing affidavits and a memorandum in opposition . . . ." (emphasis added)). While the trial court is obligated to view all material facts in a light most favorable to the non-moving party, Chapman, 167 Vt. at 159, we must base our legal ruling upon actual facts presented, not upon mere speculation, unsubstantiated pleadings, or general denials from the opposing party. Gore v. Green Mountain Lakes, 140 Vt. 262, 266 (1981) ("Allegations alone cannot create triable issues of fact.").

In the record before us, we find no specific factual allegations to support Appellants' general assertions that the proposed water-borne dock extensions, which will allow Champlain Marina to accommodate sixteen more large boats, will have some impact upon shoreland developments. Speculation allows us to theorize what impacts might possibly occur due to these additional docks and boats, but we have not been provided with factual representations to support such speculation. Thus, we are left only with Champlain Marina's factual allegations: that the proposed dock expansion will occur entirely within the navigable waters of Spaulding Bay. Without specific factual allegations concerning the shoreland impacts of the proposed expansion, we are left without a foundation for considering consistency with Ordinance § 7.03(F)(5)(c)-(f).

Thus, the general question remains whether the proposed dock expansion will adversely affect the public good, a legal question we are required to

address under 29 V.S.A. § 405(b).  Most of the remaining Questions from Appellants' Statement of Questions are premised upon § 405(b).  See Appellants' Revised Statement of Questions, filed May 9, 2009.  We will address at trial all of Appellants' remaining Questions, as well as the Questions posed in Champlain Marina's Statement of Questions filed in connection with its cross-appeal.  But for the reasons more particularly stated above, we hereby GRANT Champlain Marina summary judgment as to Appellants' Question 11.


_____          ____May 19, 2010_____
     Thomas S. Durkin, Judge                      Date
========================================================================
Date copies sent to: _____          Clerk's Initials _____
Copies sent to:
    Stephen A. Reynes, Attorney for Appellants
    Craig Weatherly, Attorney for Cross Appellant Champlain Marina, Inc.
    Cielo Marie Mendoza, Attorney for the Vermont Agency of Natural Resources
    David K. Mears, Attorney for Petitioner to Intervene, VNRC
    Jon Groveman, Esq., co-counsel for VNRC
    John H. Hasen, Atty for Vt. Natural Resources Board (FYI purposes only)